IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARK S. SMITH, JR.,
Plaintiff,

v.

No. 09-CV-1064-DRH-DGW

WACKER NEUSON CORPORATION
and WACKER NEUSON SE,
Defendants.
_____
WACKER NEUSON CORPORATION
and WACKER NEUSON SE,
Third-Party Plaintiffs,

v.

FONTANA CONTRACTING COMPANY
and WESCON PRODUCTS COMPANY,
a subsidiary of Latshaw Enterprises, Inc.,
Third-Party Defendants.

## MEMORANDUM and ORDER

**HERNDON, Chief Judge:**

### I. Introduction and Background

Pending before the Court is Wescon Products Company's motion for summary judgment (Doc. 95). Wescon Products Company ("Wescon") argues that it is entitled to summary judgment as the discovery reveals no evidence of an unreasonably dangerous and defective condition of the control cable at the time it left the control of Wescon which was a proximate cause of Smith's injury nor does it reveal any evidence of negligence on the part of Wescon which was a proximate cause of the injury; nor does the evidence support a cause of action for implied warranty. Wescon

further argues that the discovery and evidence reveals that there was no knowledge on the part of Wescon concerning the manner in which the control cable was designed or protected when incorporated into the design of the one-ton asphalt roller. Wacker Neuson Corporation ("Wacker") opposes the motion (Doc. 100). Based on the following, the Court denies the motion for summary judgment.

Mark S. Smith Jr. sued Wacker for personal injuries he suffered while employed by Fontana Contracting Company ("Fontana"). While on the job, Smith was struck by a one-ton asphalt roller manufactured by Wacker, which contained a drive control cable designed and manufactured by third party defendant Wescon. Smith sued Wacker alleging, *inter alia*, that the design of the roller was unreasonably dangerous because it did not contain an automatic fail safe or emergency stop mechanism. Thereafter, Wacker filed third party actions against Fontana and Wescon. Smith settled with Fontana and Wacker and the Court issued Orders finding good faith settlements on August 29, 2011 and on October 13, 2011 (Docs. 83 & 89, respectively).

Wacker continues to pursue its third party claim for contribution against Wescon based upon strict liability, negligence, and implied indemnity. In addition to alleging that the Wescon-designed cable was defective, Wacker alleges that Wescon was negligent by failing to warn its users of the defective condition of the cables; failing to retrofit or correct known flaws in the cables; failing to adequately test the cable to ensure that they were "corrosion resistant" before advertising to the public that they were; failing to warn its customers that its cables could fail due to corrosion

under normal, intended use; failing to provide any literature or instructions as to the limitations of the cables; and by representing that the cables would not corrode without obtaining test data to support that claim.

## II. Facts

On October 8, 2008, plaintiff Mark Smith was injured in a road paving project when a Model RD11V asphalt roller designed, manufactured and distributed by Wacker struck him in the leg. The Model RD11V roller contained a "Series 40 Armor Core" push-pull cable designed, manufactured, sold and distributed by Wescon. That type of push-pull cable was designed by Wescon in the early 1990s. The purpose of the push-pull cable, generally, is to transfer a load from an input device, such as a lever on a Wacker roller, to an output device on a piece of equipment, normally the hydrostatic fluid pump on a Wacker roller. On the day of the accident, the Wescon 40 Series push-pull cable fractured and the Wacker roller ran into Smith. Wescon prepared and distributed a sales catalog to Wacker regarding the push-pull cable. In the catalog on page 3, Wescon, *inter alia*, made the following representations with respect to the 40 Series push-pull cable:

> Wescon'a long-lay conduit construction incorporates multiple strands of oil-tempered carbon spring steel wires to withstand high tension and compression with minimum deflection under load while providing superior protection for the load carrying core;
> The extraordinary life of the conduit in Wescon controls is due to its tough polyethylene covers;
> These covers seal out environmental contaminants such as dirt and moisture, while resisting abrasion and common solvents; and
> Specifically formulated High Density Polyethylene liners (as well as special formulations for high temperature applications) minimize friction for maximum efficiency. The inside diameter is precisely controlled, minimizing lost motion and premature wear.

Further, the catalog states:

**Weson's Corrosion Resistant Design**

> All standard conduit fittings are plated steel. Guide tubes are nickel-plated brass. Rods are stainless steel for corrosion resistance. In addition, all bulk-packed Wescon cables are furnished with protective vinyl caps installed over threads to prevent damage during shipment and handling. Stainless steel conduit fittings and mounting hardware are available for marine and other demanding applications.

### III. Summary Judgment

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would-as a matter of law-conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial … against the moving party." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch,* 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).

## IV. Analysis

Wescon argues that there is no evidence that the cable was manufactured with insufficient strength and that there is evidence that Wacker selected the cable that it wanted to use from the specifications offered by Wescon.[1] Further, Wescon maintains that there is no evidence of any defect in the cable at the time it left Wescon's control. Wacker counters that it purchased the push-pull cable from Wescon based on the representations made in Wescon's sales catalog, including representations that the Wescon-designed cable was "corrosion resistant" and contained seals which prevented moisture and debris form infiltrating the cable. Wacker contends that there are disputes of fact as to the condition of the cable at the time of the accident. The Court agrees with Wacker.

Clearly, there are disputes of material as to whether the push-pull cable was defective when it left the control of Wescon under both Illinois or Missouri law. *See Pasquale v. Speed Products Engineering*, 166 Ill.2d 337, 351 (1995); *Chubb Group of Ins. v. C.F. Murphy & Associates*, 656 S.W.2d 766 (Mo. App. 1983); *Lewis v. Envirotech Corp.*, 674 S.W.2d 105 (Mo. App. 1984). Wescon's Senior Vice President

---

[1] The Court also notes, as Wacker did, that Wescon's motion for summary judgment is insufficient and that Court could deny the motion on that basis alone. Wescon's motion is comprised exclusively of conclusory statements regarding the lack of evidence and its lack of liability. It attaches several depositions to its summary judgment motion, but fails to point to any particular evidence to support its conclusion. Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material. "'Judges are not like pigs, hunting for truffles buried in' the record." *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 2002 WL 31397690 (7th Cir. 2002), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Despite being insufficient, the Court will address the merits of the motion.

of Engineering, Mr. Anthony Beuglsdyk, confirmed that the push-pull cable is intended for use by Wescon in outdoor construction equipment such as an asphalt roller. Further, Beuglsdyk determined that the push-pull cable was defective. He testified that the cable failed largely due to corrosion as the cable had "a lot of corrosion" and "a lot of debris" and that although Wescon advertised the Series 40 armored core cable as resistant to corrosion, without testing corrosion resistance to confirm such, the subject cable failed due to corrosion. Specifically, he testified that the push-pull cable failed on the date of the incident due to corrosion resulting in part from worn seals on the cable. Wescon had seen that failure mode on other occasions before the accident, but neither warned its customers of that defect nor modified its claim of "corrosion resistance." Further, Beugelsdyk conceded that the type of push-pull cable used in the Wacker roller was never tested for corrosion resistance by anyone. Beugelsdyk referred to the cable as defective in his own written report. Further, Wescon's Rule 26 liability expert, James Briem, wrote a report criticizing the design of the push-pull cable as defective. Briem stated: "The push-pull cable failed due to corrosive attack of the carbon steel cable. At the time of the fracture, corrosion had reduced the strength of the cable to about 10% of its original strength." Also, Wacker's expert, Michael Rogers, determined that the design of the push-pull cable was defective for its reasonable and intended use on outdoor construction equipment, therefore, rendering the cable defective when it left Wescon's control. Based on the foregoing, the Court concludes that there are genuine issues of fact that precludes summery judgment.

As noted by the parties' briefs, there seems to be a dispute as to whether Missouri or Illinois law applies to this case. This issue has not been fully developed by the parties and must be resolved prior to trial.[2] Thus, the Court **DIRECTS** the parties to brief this issue. The briefs shall be no longer than 10 pages in length and the briefs are due on or before May 21, 2012.

## V. Conclusion

Accordingly, the Court **DENIES** Wescon's motion for summary judgment (Doc. 95). Further, the Court **SETS** this matter for Final Pre-trial Conference on July 12, 2012 at 1:30 p.m.

**IT IS SO ORDERED.**

Signed this 30th day of April, 2012.

David R. Herndon
2012.04.30
14:34:46 -05'00'

**Chief Judge**

**United States District Court**

---

[2] When a federal court hears a case in diversity, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, the Court would ordinarily follow Illinois choice of law to decide this issue. However, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426 (7th Cir.1991). Moreover, failure to raise the issue can be considered a waiver. *See GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1115 n. 6 (7th Cir.1995).